UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| BRENDA J. MASON, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No. 2:10CV2MLM |
| MICHAEL J. ASTRUE, Commissioner of Social Security | ) ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

This is an action brought pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of Michael J. Astrue ("Defendant") denying the application for Social Security benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq. filed by Plaintiff Brenda Mason ("Plaintiff"). Plaintiff has filed a brief in support of the Complaint. Doc. 16. Defendant has filed a brief in support of the Answer. Doc. 20. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 7.

## PROCEDURAL HISTORY

On February 2, 2006, Plaintiff filed applications for benefits. Tr. 10. Plaintiff's claim was denied on May 15, 2006. Tr. 44-55, 50-54. A hearing was held before an ALJ on March 14, 2008. Tr. 10, 25-43. By Decision dated December 16, 2008, the ALJ found that, from October 16, 2005, through January 7, 2008, Plaintiff was under a "disability" as defined in the Act. Tr. 15-16. The ALJ further found that Plaintiff's disability ended on January 8, 2008. Tr. 17. On November 25, 2009, the Appeals Council of Social Security Administration denied Plaintiff's request for review. Tr. 1-4. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

# II.
# LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § § 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities … ." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent claimant from doing past relevant work. 20 C.F.R. §§ 416.920(e), 404.1520(e). The burden rests with the claimant at this fourth step to establish his or her

Residual Functional Capacity ("RFC"). Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's residual functional capacity and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir.

3

2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617; Guillams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022. See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell

4

v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be

5

produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Id.; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Guillams, 393 F.3d at 801; Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility

assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the residual functional capacity to perform other kinds of work. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

# III.
# DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

The ALJ considered that, on October 16, 2005, Plaintiff fell and sustained a comminuted fracture of the tibia and fibula; that Plaintiff underwent an open reduction and internal fixation of tibia with a periarticular plate for these injuries, which surgery was performed by E. Glenn Browning, D.O.; and that Plaintiff was instructed to remain non-weight-bearing on her left leg. Tr. 176, 184-85. The ALJ further considered that Plaintiff remained non-weight-bearing and continued to experience pain; that February 2, 2006 x-rays revealed that Plaintiff's internal fixation screw was near the surface and needed to be removed (Tr. 194); that, on February 3, 2006, Plaintiff underwent a surgery for removal of screw (Tr. 193); that, on March 10, 2006, Plaintiff had surgery to remove the orthopedic plate from left tibia (Tr. 208); that, after the surgery to remove the plate, Plaintiff was to continue with the use of a walker and "just be partial-weight-bearing" (Tr. 208); that, on April 4, 2006, Dr. Browning stated that Plaintiff was to remain non-weight-bearing and that she was totally disabled and unemployable at that time; that, on June 21, 2006, Plaintiff underwent a bone biopsy and excision and debridement of her left tibia (Tr. 234, 229); that on August 18, 2006, Plaintiff underwent a second debridement of her left tibia (Tr. 221); that treatment notes, after the second debridement, reflect that Plaintiff had to undergo a third debridement on her left tibia on December 13, 2006 (Tr. 273-75); and that Plaintiff's fixation devices in her iliac crest bone were surgically removed on March 1, 2007 (Tr.291-94, 373). The ALJ found that, after her third debridement, the "allowable poundage of

weight bearing was steadily increased" as Plaintiff continued to report decreasing pain. The ALJ found that Plaintiff was disabled through January 7, 2008; that after, that date, Plaintiff made sufficient medical improvement so that she had the RFC to perform the full range of sedentary work; that Plaintiff's RFC after January 7, 2008, permitted her to perform her past relevant work as a telemarketer; and that, therefore, Plaintiff was not disabled, as of January 8, 2008.

Plaintiff contends that the ALJ failed to analyze the specific mental and physical requirements of Plaintiff's past relevant work as a telemarketer; that no VE testified regarding the demands of Plaintiff's work as a telemarketer; and that, therefore, the ALJ erred in regard to fully developing the record in regard to the finding that Plaintiff could return to her work as a telemarketer. Plaintiff contends that, because of these errors, the ALJ's decision is not supported by substantial evidence.

**A.      Plaintiff's Medical Improvement:**

Upon finding that Plaintiff was not disabled as of January 8, 2008, the ALJ considered that it was reported on January 7, 2008, that Plaintiff had developed enough collateral flow so that she did not have recurrent rest pain; that examination showed that Plaintiff's left lower extremity had some tenderness "but it was neurologically intact with normal reflexes, strength, and range of motion"; that "x-rays showed her fractures were well healed"; that although she had some quadricep weakness, [Plaintiff] was able to fully weight bear and was ordered to follow up within twelve months and she was to wean herself off the use of a cane." Tr. 17.

The court notes that May 30, 2007 medical records reflect that Plaintiff said she was improving; that she was walking with a walker; that Plaintiff had quadricep and lower leg atrophy; that Plaintiff's range of motion of the knee was "0 to 120 degrees"; that there was no "tenderness to palpation along the leg"; that Plaintiff's sensory and motor exam was "otherwise within normal limits"; and that x-rays showed that the hardware was in place with no evidence of hardware "failure"

9

and that "it look[ed] like there [was] increased consolidation" of the nonunion from the previous visit. Tr. 357, 513-14. Also, July 17, 2007 medical records reflect that Plaintiff stated that she was "improving"; that Plaintiff was "having less pain"; that Plaintiff had "occasional ache" along the top of her knee; that Plaintiff had been in physical therapy; that Plaintiff stated that she felt like she was making "good progress" in therapy; and that Plaintiff was "generally satisfied" with how she was doing." Tr. 351, 510. Medical records on this date further reflect that Plaintiff was walking with a four-point cane; that the "large scar" across the anterior distal aspect of the lower left leg was closed without evidence of infection; that there was no skin breakdown, warmth, erythema or ecchymosis; that there was no tenderness to palpation along the inside or the incision site; that her range of motion of the knee was zero to 120 degrees; that there was "significant" quadricep atrophy on the left compared to the right; that Plaintiff would continue to weight bear as tolerated; and that she was "urged" again about the importance of smoking cessation. Tr. 352, 511. Plaintiff had a follow-up visit on September 20, 2007, on which date the medical records reflect that a plan for Plaintiff was to "continue strengthening, weight bear as tolerated." Tr. 348. On this date, Brian Green, M.D., reviewed an x-ray image of the AP and lateral views of Plaintiff's left knee and reported that position and alignment were "stable"; that there was "persistent luceny of the medial aspect of the fracture site"; and that there was no new fracture, dislocation, or joint effusion. Tr. 350. On September 29, 2007, John Markovitz, N.P., reported that Plaintiff stated that she was "doing well"; that she was not having "significant pain"; and that she felt like she was "regaining" her strength and walking "better now that she has been in physical therapy." Nurse Markovitz further reported that Plaintiff continued to smoke "but would like to quit and would accept some assistance with that." Tr. 347.

On January 7, 2008, Plaintiff was seen at the Orthopaedic Clinic by Kelly Small, A.P.R.N., for follow-up. It was reported on this date, with respect to Plaintiff's leg, that: "Pain score/severity:

10

1/10"; "Quality: dull ache"; "Aggravating factors: when sitting extended period of time"; "Timing: off and on"; "Other: using otc pain meds. Uses cane when outside of home, primarly [sic] to protect against knee instability also c/o left knee instability/'giving way' aggrevated [sic] by going down stairs, relieved by using cane"; "ROS: No recent fevers, chills, or night sweats. No numbness/tingling in injured extremity. No calf pain. No SOB/chest pain. No falls since last visit." With respect to Plaintiff's skin, records of January 7, 2008, state that the "[s]urgical incision was clean, dry, intact, and well-healed without erythema, edema, or drainage." Records of this date also state, in regard to Plaintiff's lower left extremity, that sensation was intact to light touch. Records of this date further state that radiographs of the left knee showed "change in the hardware interval callus formation" and that the fracture "appear[ed] healed." The assessment included "quad weakness and possible early arthritis." The plan on January 7, 2008 included "[w]eightbearing as tolerated LEFT lower extremity; wean cane" and states that a "quad strengthening program" was discussed. Tr. 344-45, 517-22. On the same date, Kenneth L. Rall, M.D., reviewed x-ray images of Plaintiff's left tibia and stated that operative plate and screw transfixing lateral surface of the tibia was "stable"; that fracture of the tibia was "stable with further callus deposition"; that "[d]egenerative changes of the knee [were] stable"; and that there was no new fractures or bone destruction. Tr. 346.

Upon finding that Plaintiff was not disabled after January 7, 2008, the ALJ considered Plaintiff's subjective complaints in view of the medical evidence and concluded that Plaintiff's complaints regarding her symptoms were not fully credible after that date. See Davidson v. Astrue, 501 F.3d 987, 991 (8th Cir. 2007) (holding that an ALJ can discount opinion evidence based on "an appropriate finding of inconsistency with other evidence"); Ramirez v. Barnhart, 292 F.3d 576, 581 (8th Cir. 2002) ("[A]n ALJ is entitled to make a factual determination that a Claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary."); Orrick v.

11

Sullivan, 966 F.2d 368, 372 (8th Cir. 1992) (holding that an ALJ may discredit a claimant's subjective complaints where there are inconsistencies in the record; the ALJ may give more weight to the medical records than to a claimant's testimony); Russell v. Sullivan, 950 F.2d 542, 545 (8th Cir. 1991); Edwards v. Secretary of Health & Human Services, 809 F.2d 506, 508 (8th Cir. 1987).

The court finds that substantial evidence supports the ALJ's findings that, as of January 7, 2008, Plaintiff was fully able to bear weight; that there were no indications that she had any significant limitations as a result of her fractures; that Plaintiff's testimony that she still experienced pain with prolonged sitting was not substantiated by the record as there was no evidence of swelling after sitting or indications of tenderness to touch; and that the evidence demonstrates that Plaintiff was able to maintain activity, at least, at the sedentary level. The court further finds that substantial evidence supports the ALJ's decision that Plaintiff made sufficient medical improvement as of January 7, 2008, so that she was able to engage in sedentary work.[1]

---

[1] 20 C.F.R. § 404.1567(a) defines sedentary work as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." Indeed, SSR 85-15, 1985 WL 56857, at *5, states that "[w]here a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work. ... If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact." The sitting requirement for the full range of sedentary work "allows for normal breaks, including lunch, at two hour intervals." Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005) (citing SSR 96-9p, 1996 WL 374185, at *6 (July 2, 1996)). Additionally the range of sedentary jobs requires a claimant "to be able to walk or stand for approximately two hours out of an eight-hour day. The need to alternate between sitting and standing more frequently than every two hours could significantly erode the occupational base for a full range of unskilled sedentary work." Id. at 997 (citing 1996 WL 374185 at *7). Moreover, SSR 96-9p requires that "the RFC assessment should include the frequency with which an applicant needs to alternate between sitting and standing, and if the need exists, that vocational expert testimony may be more appropriate than the grids." Id. It also states that "a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of disabled."

**B.     Plaintiff's Past Relevant Work:**

Plaintiff contends that the ALJ erred in finding that Plaintiff can perform her past relevant work as a telemarketer after January 7, 2008. In particular, Plaintiff contends that the ALJ did not determine that she could perform her past relevant work as she actually performed it.

The Social Security regulations define "past relevant work" as "work experience [which] ... was done within the last fifteen years, lasted long enough for [the claimant] ... to learn to do it, and was substantial gainful activity." 20 C.F.R. § 404.1565(a). If the claimant is found to be able to perform the duties of his [or her] past relevant work, then he or she is considered not disabled and therefore ineligible for benefits. Bowen v. City of New York, 476 U.S. 467, 471 (1986); Martin v. Sullivan, 901 F.2d 650, 652 (8th Cir. 1990). 20 C.F.R. § 1520 states, in relevant part:

> (e) When your impairment(s) does not meet or equal a listed impairment. If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity based on all the relevant medical and other evidence in your case record, as explained in § 404.1545. (See paragraph (g)(2) of this section and § 404.1562 for an exception to this rule.) We use our residual functional capacity assessment at the fourth step of the sequential evaluation process to determine if you can do your past relevant work (paragraph (f) of this section) and at the fifth step of the sequential evaluation process (if the evaluation proceeds to this step) to determine if you can adjust to other work (paragraph (g) of this section).
>
> (f) Your impairment(s) must prevent you from doing your past relevant work. If we cannot make a determination or decision at the first three steps of the sequential evaluation process, we will compare our residual functional capacity assessment, which we made under paragraph (e) of this section, with the physical and mental demands of your past relevant work. (See § 404.1560(b).) If you can still do this kind of work, we will find that you are not disabled.

The Eighth Circuit has commented that when determining whether a claimant can perform past relevant work, the following considerations are appropriate:

> According to the Secretary's interpretation, sections 404.1520(e) and 416.920(e) require careful consideration of the interaction of the limiting effects of the person's impairment(s) and the physical and mental demands of his or her PRW to determine whether the individual can still do that work. ...
>
> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issues as clearly and explicitly as circumstances permit.
>
> Sufficient documentation will be obtained to support the decision. Any case requiring consideration of PRW will contain enough information on past work to permit a decision as to the individual's ability to return to such past work....
>
> Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations. Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate. This information will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source....

Groeper v. Sullivan, 932 F.2d 1234, 1238 (8th Cir. 1991) (citing SSR No. 82-62, Soc. Sec. Rep. 809, 811-12 (West 1983).

SSR 82-62, requires that an ALJ has an obligation to "'fully investigate and make explicit findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant herself is capable of doing before he determines that she is able to perform her past relevant work.'" Id. at 1238 (quoting Nimick v. Sec'y of Health and Human Servs., 887 F.2d 864, 866 (8th Cir.1989). Moreover, where the record contains substantial evidence that claimant can perform past work, the ALJ's failure to develop past work record in full detail does not require remand. See Battles v. Sullivan, 902 F.2d 657, 659 (8th Cir.1990)

"An ALJ's decision that a claimant can return to his past work must be based on more than conclusory statements. The ALJ must specifically set forth the claimant's limitations." Id. Further,

14

the ALJ must determine how a claimant's limitations affect his or her RFC. Additionally, the ALJ must [] make explicit findings regarding the actual physical and mental demands of the claimant's past work. Then, the ALJ should compare the claimant's residual functional capacity with the actual demands of the past work to determine whether the claimant is capable of performing the relevant tasks." Id. (citing Kirby, 923 F.2d at 1326-27).

Additionally, 20 C.F.R. § 404.1560(b) states, in relevant part, regarding past relevant work:

(2) Determining whether you can do your past relevant work. We will ask you for information about work you have done in the past. We may also ask other people who know about your work. (See § 404.1565(b).) We *may* use the services of vocational experts or vocational specialists, or other resources, such as the "Dictionary of Occupational Titles" and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity. A vocational expert or specialist *may* offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. *Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work.* In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

(3) If you can do your past relevant work. If we find that you have the residual functional capacity to do your past relevant work, we will determine that you can still do your past work and are not disabled. We will not consider your vocational factors of age, education, and work experience or whether your past relevant work exists in significant numbers in the national economy. ...

Plaintiff testified that she worked as a telemarketer from late 2003 until the date of her accident, October 16, 2005. Tr. 29-30. Plaintiff further testified that as a telemarketer, she conducted surveys for major corporations by telephone and computer, and that she sat at her desk and looked at the computer "[p]robably 90 percent" of the day. Tr. 30-31. Also, on her work history report, Plaintiff stated that her work as a telemarketer required that she "complete[] on line surveys for large

corporations using headsets & computer." She also stated that this job required, in a day, that she walk for one hour, stand for thirty minutes, sit for six hours, and write, type or handle small objects for six hours. She further stated that this job did not require that she climb, kneel, crouch, crawl, or handle, grab, or grasp big objects; that she "lifted & carried a headset twice daily"; that the heaviest weight she lifted was ten pounds; and that she frequently lifted less than ten pounds. Tr. 120. Thus, the record does include a description of Plaintiff's past relevant work as a telemarketer as Plaintiff actually performed this job and establishes the physical and mental demands of Plaintiff's past relevant work. See Groeper, 932 F.2d at 1238. Moreover, Plaintiff's description of her job as a telemarketer is consistent with the requirements of sedentary work, which involves sitting and requires lifting no more than ten pounds and walking or standing for two hours. As such, the court finds that the ALJ's determination that Plaintiff can perform her past relevant work as a telemarketer is supported by substantial evidence and that it is consistent with the Regulations and case law. To the extent that the ALJ did not make explicit findings regarding the demands of Plaintiff's work as a telemarketer and her RFC, because the ALJ's decision is based on substantial evidence, remand is not required. See Battles, 902 F.2d at 659.

Although Plaintiff contends that the ALJ should have solicited the testimony of a VE, as discussed above, the Regulations do not require that an ALJ solicit the testimony of a VE to determine the demands of a particular job. See 20 C.F.R. § 404.1560(b). Moreover, the ALJ did not find that Plaintiff had any non-exertional limitations. If the claimant is found to have only exertional impairments, the Commissioner is not required to solicit the testimony of a VE. See Robinson, 956 F.2d at 839. Under such circumstances, the ALJ in the matter under consideration was not required to solicit the testimony of a VE.

## V.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint and in her Brief in Support of Complaint is **DENIED**;  Docs. 1, 16

**IT IS FURTHER ORDERED** that judgment be entered in favor of Defendant and against Plaintiff in the instant cause of action.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of February, 2011.